**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Gilbert Martinez Jose,<br><br>　　　　　Defendant. | No. CR-19-02313-001-TUC-CKJ (MSA)<br><br>**SUPPLEMENTAL ORDER** |

On December 7, 2021, after hearing oral argument on the matter, the Court denied Defendant's Motion for New Trial. (Doc. 148) This Order summarizes the Court's reasoning for denying Defendant's motion.

**PROCEDURAL HISTORY**

On November 2, 2021, Defendant filed his Motion for New Trial. (Doc. 148) On November 12, 2021, the Government filed its Response to Defendant's Motion for New Trial. (Doc. 150) On December 7, 2021, oral argument was held on Defendant's Motion for New Trial (Doc. 148) and Motion to Set Aside Verdicts on Counts II, III, and IV of the Indictment (Doc. 147). This Order supplements the Court's denial of Defendant's Motion for New Trial.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 allows a court to order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although a court's power to grant

a motion for a new trial is "much broader than its power to grant a motion for judgment of acquittal," it may not grant the motion unless it finds that "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict" such that "a serious miscarriage of justice may have occurred." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992). "The burden of justifying a new trial rests with the defendant," and "[t]he decision to grant a new trial is within the sound discretion of the trial court." *United States v. Saya*, 101 F. Supp. 2d 1304, 1307 (D. Haw. 1999), *aff'd,* 247 F.3d 929 (9th Cir. 2001).

## DISCUSSION

Defendant raised six arguments for relief in his Motion for New Trial, arguing that (i) his Sixth Amendment right to a jury from a fair cross section of the community was violated because there was no member of the Tohono O'odham Indian Nation, or any other tribe, within the pool of potential jurors for his trial; (ii) the Court erroneously sustained the Government's objection to allowing the defense to question the victim about her prior felony after the Government "opened the door" to such questioning; (iii) the Court erroneously denied Defendant's motion for mistrial; (iv) the Court erroneously denied Defendant's motions for judgment of acquittal for the offenses of assault with a dangerous weapon and use of a firearm in connection with that offense; (v) the Court erroneously instructed the jury with respect to the elements of the offense of assault with a dangerous weapon; and (vi) the Court erroneously denied Defendant's motion for a jury instruction on lost or destroyed evidence. (Doc. 148) At the December 7, 2021 hearing on Defendant's motions to set aside verdicts and for a new trial, the Court denied Defendant's Motion for New Trial and indicated that it would issue a supplemental Order summarizing the reasons for its denial.

### I. Defendant's Sixth Amendment Rights Not Violated

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are

selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  The second prong of the *Duren* test "requires that the defendant show underrepresentation in 'venires' from which 'juries' are selected." *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985) (footnote and citation omitted).  "[A] violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in *a single jury*." *Id.* (emphasis added).  "While juries must be drawn from a source fairly representative of the community, the composition of *each jury* need not mirror that of the community." *Id.* (citations omitted).

In support of his assertion that his Sixth Amendment rights were violated at trial,[1] Defendant argued:

> [My] Sixth Amendment right to a jury selected from a fair cross-section of the community was violated because there was no member of the Tohono O'Odham Indian Nation, or any other tribe, represented within the pool of potential jurors for this trial. There was one member on the panel who claimed to be Native American and another who said he recently learned from a "23 and Me" test that he might be part Native American. That is insufficient.

Doc. 148 at 1-2 (citations omitted).

Defendant's argument fails to demonstrate that he has suffered a prima facie violation of the fair-cross-section requirement.  In addition to the fact that there were two potential jurors with Native-American ancestry in the venire—one of whom was seated as a final juror for trial—Defendant fails to satisfy any of the three *Duren* factors, and his motion is untimely. *See* 28 U.S.C. § 1867(a) ("In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the

---

[1] Defendant chose to forego additional argument on this issue at the December 7, 2021 motion hearing.

ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."). While the Court agrees that juries must be drawn from a source representative of the community, it finds that Defendant fails to meet his burden of establishing that he did not receive such a venire at his trial. Accordingly, Defendant's Motion for a New Trial on this ground is denied.

## II.   Court Properly Sustained Objection to Improper Questioning

Under the Federal Rules of Evidence, a witness's character for truthfulness may be attacked by evidence of a criminal conviction, Fed. R. Evid. 609, but a trial judge has "wide discretion in deciding whether to exclude evidence of prior convictions as more prejudicial than probative of lack of credibility," *United States v. Oaxaca*, 569 F.2d 518, 526 (9th Cir. 1978). At trial, the Government questioned witness Irene Ortega about her 2017 felony endangerment conviction and clarified that her conviction was because she was driving under the influence. Defense counsel wanted to question Ms. Ortega about the facts underlying her DUI offense, including the fact that she had a .30 blood alcohol content when she was arrested. The Court denied this request, as the facts underlying Ms. Ortega's arrest were irrelevant to the charges against the Defendant and were not probative of the witness's credibility. Additionally, the Court ruled that the Government's clarification that Ms. Ortega's endangerment conviction was for driving under the influence failed to "open the door" to invite additional questioning of the facts underlying that offense. Defendant failed to suffer prejudice as a result of the Court's ruling and it was well within the Court's discretion to sustain the Government's objection to additional questioning on the issue. Accordingly, Defendant's Motion for a New Trial on this ground is denied.

## III.   Defendant Not Entitled to Mistrial for Brady Violation

"Denial of a motion for mistrial based on allegation of prosecutorial misconduct is reviewed for abuse of discretion." *United States v. Scholl*, 166 F.3d 964, 974 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17, 1999). To rise to the level of a due process violation, the nondisclosure of favorable evidence, whether it is exculpatory or useful only for impeachment, must have been "so serious that there is a reasonable probability that the

suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). To determine prejudice, "the withheld evidence must be analyzed in the context of the entire record," and will be deemed prejudicial or material "only if it undermines confidence in the outcome of the trial." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).

Defendant argues that the Court erroneously denied his motion for a mistrial, which was based on the Government's failure to disclose the fact that there were numerous witnesses at the party/dance who were interviewed by a Tohono O'odham police detective and neither their names or contact information were included in reports disclosed to him in connection with his case. However, the Court heard evidence from the Government that the individuals at the party/dance were not "witnesses"[2] to the incident in question, rather they were present for a separate crime committed in a nearby location on the same night. The Government also informed the Court that:

> Despite the government having no obligation to disclose these materials to defendant, the government did in fact disclose reports that were obtained by the FBI in relation to this other shooting incident. Those reports (Bates 1926-1937 and 1942-1948), along with a 911 call related to the other shooting (Bates 1917) were disclosed to defendant. The government does not have any other reports or interviews related to that other shooting because it was unrelated and completely irrelevant. Detective Garcia did not include information about that shooting in reports detailing this incident because they are unrelated and irrelevant.
> . . . .
>
> Additionally, there were two individuals who were at the dance who were interviewed, in connection with this case. Those interviews (Bates 2088-2089) and reports and notes detailing those interviews (Bates 151-153) were also disclosed to defense counsel even though the government did not call either of them as witnesses in this case. In those interviews, names of other people present at the party are mentioned who had interacted with the victims in this case.

---

[2] Fact Witness. A witness who has firsthand knowledge of something based on the witness's perceptions through one of more of the five senses. *Witness*, Black's Law Dictionary (11th ed. 2019).

Doc. 125 at 2-3. In addition to the aforementioned information, the defense team had access to multiple sources—including its own witnesses—who could have provided the names of the individuals at the party/dance on the evening and early morning of the day in question. Defendant failed to demonstrate this information was material to his defense or that the Government intentionally withheld evidence which was so prejudicial as to undermine confidence in the outcome at trial. The Court was well within its discretion to deny Defendant's motion for mistrial, and his Motion for New Trial on this ground is denied.

### IV. Jury Properly Instructed On Assault With A Dangerous Weapon[3]

Whether a jury instruction misstates elements of the crime in question is a question of law reviewed by the Court of Appeals de novo. *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997).

In *United States v. Acosta-Sierra*, the United States Court of Appeals for the Ninth Circuit addressed the elements of common law assault, in detail. 690 F.3d 1111 (9th Cir. 2012). It instructed:

> [W]e have adopted the common law definition of assault *as either* (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.
>
> The first type of common law assault is an attempt to commit a battery. For this type of assault, there need not be physical contact with the intended victim or reasonable apprehension on the part of the victim.
>
> The second type of criminal assault, sometimes called an intent-to-frighten derives from the law of torts and recognizes the importance of protecting individuals from the mental disturbance of being put in reasonable apprehension of bodily harm. For this latter type of assault, one does not necessarily need to be put in actual danger. Even if one is only put in reasonable apprehension of imminent harm, the suffering is the same in the one case as in the other, and the breach of the public peace is the same.

---

[3] This heading covers Defendant's arguments four and five for a new trial.

- 6 -

> Although the *two types of common law assault* involve *distinct elements*, the difference between them often goes unnoticed because a violation of one type is usually a violation of the other type as well.

*Id.* at 1117–18 (emphasis added) (internal quotation marks, citation, and footnote omitted). The court also observed that "when an individual is charged with assault as an attempted battery, the victim's apprehension of imminent harm is inconsequential." *Id.* at 1120.

At trial, the Court heard testimony from victim Irene Ortega that she was not in reasonable apprehension of bodily harm, as the Defendant was wearing dark clothes, it was still dark out, and she thought she heard firecrackers as opposed to gunfire. Due to her uncontradicted testimony, the Court gave the following jury instruction concerning assault with a deadly weapon under 18 U.S.C. § 113(a)(3):

> THE DEFENDANT IS CHARGED IN COUNT TWO WITH ASSAULT WITH A DANGEROUS WEAPON. IN ORDER FOR A DEFENDANT TO BE FOUND GUILTY OF THAT CHARGE, THE GOVERNMENT MUST PROVE EACH OF THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT: FIRST, THE DEFENDANT ASSAULTED IRENE ORTEGA BY WILLFULLY ATTEMPTING TO INFLICT INJURY UPON HER; SECOND, THE DEFENDANT ACTED WITH THE INTENT TO DO BODILY HARM TO IRENE ORTEGA; THIRD, THE DEFENDANT USED A DANGEROUS WEAPON; FOURTH, THE OFFENSE WAS COMMITTED WITHIN THE CONFINES OF THE TOHONO O'ODHAM NATION IN THE DISTRICT OF ARIZONA; AND FIFTH, THE DEFENDANT WAS AN INDIAN AT THE TIME OF THE OFFENSE.

Doc. 140 at 24.

Defendant argued this instruction was erroneous because the battery clause did not apply to the facts of this case; in order to prove assault via the battery clause, there must be some contact or physical touching of the victim; and, in the absence of contact or physical touching, the assault charge must be based on the threat clause. *See* Doc. 116 at 6-8. However, the Court concluded, and reiterates here, that based on the facts established at trial, and in accord with language from *Acosta Sierra*, 690 F.3d at 1117-20, *United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (cleaned up) ("[A] defendant may be

convicted of assault if he commits a willful attempt to inflict injury upon the person of another. The *mens rea* requirement is that the volitional act be willful or intentional; an intent to cause injury is not required. Neither is a showing of fear on the part of the victim required under this theory of assault."), and *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976) (internal punctuation and citations omitted) ("Assault had two meanings at common law. A criminal assault was an attempt to commit a battery. A tortious assault was an act which put another in reasonable apprehension of immediate bodily harm. Both concepts of assault have become recognized as criminal assaults and are included under the federal definition of assault."), its jury instruction on assault with a dangerous weapon did not misstate the elements of the crime. Accordingly, the Court did not abuse its discretion in denying Defendant's motion for judgment of acquittal on counts II and IV, and Defendant's Motion for New Trial on this ground is denied.

## VI.     Jury Instruction on Lost or Stolen Evidence Unwarranted

A district court's refusal to give an adverse inference instruction is reviewed for an abuse of discretion. *United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018). Under the abuse of discretion standard, the Court of Appeals first asks whether the district court applied the correct legal rule, and then determines whether the court's application of the rule was either (1) illogical, (2) implausible, or (3) without support. *Id*.

An instruction concerning evidence lost or destroyed by the government is appropriate when the balance "between the quality of the [g]overnment's conduct and the degree of prejudice to the accused" weighs in favor of the defendant. *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). "[T]he government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013). In evaluating the government's conduct, a court should consider (i) whether the evidence was lost or destroyed while in the government's custody, (ii) whether it acted in disregard of the defendant's interests, (iii) whether it was negligent, (iv) whether the prosecuting attorneys

were involved, and, if the acts were deliberate, (v) whether they were taken in good faith or with reasonable justification. *Id.* (citing *Loud Hawk*, 628 F.2d at 1152). Factors relevant to prejudice to the defendant include (i) the centrality and importance of the evidence to the case, (ii) the probative value and reliability of secondary or substitute evidence, (iii) the nature and probable weight of the factual inferences and kinds of proof lost to the accused, and (iv) the probable effect on the jury from the absence of the evidence. *Id.* at 1173-74 (citing *Loud Hawk*, 628 F.2d at 1152). While a showing of bad faith on the part of the government is required to warrant the dismissal of a case based on lost or destroyed evidence, it is not required for a remedial jury instruction. *Id.* at 1170.

Defendant argues that the Court erroneously denied his motion for a jury instruction on lost or destroyed evidence because TOPD detectives testified that potential witnesses at the party/dance were interviewed but their contact information was not included in any reports associated with this case, and photographs of the deceased victim before he was taken to the hospital were lost after being uploaded to a computer system. (Doc. 148 at 4)

Defendant's initial motion for a lost or stolen evidence jury instruction was based upon unspecified pieces of evidence. *See* Doc. 123 at 1. It stated:

> Evidence that should have been retained was not. Evidence that was retained often had chain of custody problems. And, evidence that could have assisted the defense investigation was not disclosed.

*Id.* Defendant brings his renewed motion for a lost or stolen evidence jury instruction in the motion at hand using potential witnesses at the party/dance who were interviewed but not disclosed and photographs taken of the victim as the lost or stolen items of evidence.

The Court has concluded that interviews of witnesses to a separate incident were irrelevant to the case at hand. *Supra* at 6. Additionally, Defendant fails to demonstrate any prejudice for the lack of photographs of the victim at trial, and there is no evidence to draw the reasonable inference that the prosecution acted in bad faith to preclude the photographs from submission. In fact, the Government has been upfront with the fact that the photos were inaccessible due to computer issues at the Tohono O'odham Police

Department.  *See* Doc. 150 at 8.  Accordingly, Defendant's Motion for New Trial on this ground is denied.

**IT IS ORDERED:**

1.  In addition to the reasons elucidated at the December 7, 2021 motion hearing, Defendant's Motion for New Trial (Doc. 148) is DENIED.

2.  Defendant's sentencing remains set for January 24, 2022, at 11:00 a.m.

Dated this 13th day of December, 2021.

_____
Honorable Cindy K. Jorgenson
United States District Judge